Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, July 24, 2006 4:32:26 PM

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| MARK ALLEN DELBRUGGE, and ) | Case No. 05-6411 |
| PATRICIA ANN DELBRUGGE ) | |
| ) | |
| Debtors. ) | |

## MEMORANDUM OPINION

Green Tree Mortgage Services Division ("Green Tree") objects to confirmation of the Chapter 13 plan proposed by Mark Allen Delbruggee and Patricia Ann Delbruggee (the "Debtors") on the basis that the Debtors should not be allowed to deduct the costs of a hypothetical sale of their residence in performing the best interests of the creditors calculation of 11 U.S.C. § 1325(a)(4) due to the particular facts of this case.

The court held a hearing in this matter on July 11, 2006, in Wheeling, West Virginia, at which time the court took Green Tree's objection under advisement. For the reasons stated herein, the court will overrule the § 1325(a)(4) objection, but will allow Green Tree to assert a good faith objection, or any other objection, to confirmation of the Debtors' proposed plan under § 1325(a)(3) at the continued confirmation hearing.

## I. BACKGROUND

When the Debtors filed their October 14, 2005 Chapter 13 bankruptcy petition, Green Tree purported to have two debts owing to them by the Debtors that were secured by separate deeds of trust on the Debtors' principal residence. One deed of trust secured a $5,831 debt, and the second ostensibly secured a debt for $129,159. As a result of a separate adversary proceeding, No. 05-188, the Debtors'

1

Chapter 13 trustee (the "Trustee") avoided the deed of trust purporting to secure the $129,159 debt because Green Tree had mistakenly released it. Branch Banking & Trust Company also holds a deed of trust on the Debtors' principle residence securing a debt of $27,728. Apart from the unsecured claim of Green Tree, the Debtors listed $2,352 in unsecured indebtedness on Schedule F; only one of those creditors, however, has filed a proof claim (for $101). One reason why the Debtors have relatively little unsecured debt is that they filed an earlier Chapter 7 case on May 18, 2004, No. 04-1783, and obtained a discharge on November 2, 2004 – less than one year before the filing of this case. In the Debtors' previous case, they listed $218,751 in unsecured debt. Although Green Tree's release of the deed of trust had occurred before the Debtors' filed their Chapter 7 case, they listed Green Tree's two deeds of trust on Schedule D as secured debts in their Chapter 7 case.

As a result of the adversary proceeding against Green Tree in connection with this Chapter 13 case, the Debtors significantly increased the equity in their principal residence. At the July 11, 2006 confirmation hearing, the Debtors and Green Tree agreed that the value of the Debtors' residence is $124,500 and that if the property were sold under Chapter 7 of the Bankruptcy Code then $12,500 would be the approximate costs of sale. Based on the Trustee's calculation, the value of the Debtors' estate for purposes of the best interest of the creditors test of 11 U.S.C. § 1325(a)(4) is $88,945 if there is no allowed deduction for costs of selling the Debtors' residence in Chapter 7, and $76,018 if the deduction is allowed.

## II. DISCUSSION

Green Tree argues that the $12,500 estimated cost of sale for the property should not be considered in performing the best interest of the creditors test of 11 U.S.C. § 1325(a)(4) on the basis that it is the largest unsecured creditor of the Debtors' estate, the purpose of the Debtors' bankruptcy filing was to avoid its mortgage due to its mistake in releasing a deed of trust, and that it is unfair to allow the Debtors to receive a windfall under such circumstances. Green Tree contends that the replacement value of the residence – without deductions for hypothetical costs of sale – should be used instead of a foreclosure / liquidation value based on the United States Supreme Court decision in *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 960 (1997) (valuing collateral that a debtor proposed to retain in a Chapter 13 plan based on what it would cost the debtor to replace it).

2

As a condition to confirmation, the Bankruptcy Code requires:

> [T]he court shall confirm a plan if . . . (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1325(a)(4).

"For purposes of the hypothetical liquidation in § 1325(a)(4), after valuing all assets that would be available in a Chapter 7 case, it is appropriate to deduct the costs of liquidation, including trustee's fees and other administrative expenses." Keith M. Lundin, *Chapter 13 Bankruptcy* § 160.1, p. 160-18 (3rd ed. 2004). Appropriate deductions used in making the calculation required by § 1325(a)(4) include: Chapter 7 trustee's fees, the costs of sale, exemptions, and capital gain taxes. *E.g.*, *In re Ruggles*, 210 B.R. 57, 59-60 (Bankr. D. Vt. 1997) (deducting the value of the debtor's claimed exemptions); *In re Young*, 153 B.R. 886, 888 (Bankr. D. Neb. 1993) (deducting capital gains tax); *In re Dixon*, 140 B.R. 945, 947 (Bankr. W.D.N.Y. 1992) (using a 10% cost of sale figure based on the well found experience of the court, considering the amount of real estate commissions and trustee's fees incurred as part of a normal sale).

Notwithstanding the general rule that the liquidation value, less the associated Chapter 7 costs, is to be used for property when performing the best interests of the creditors test, Green Tree argues that the court should follow the replacement value analysis as used by the Supreme Court in *Rash*, under which no deduction is allowed for the costs associated with a liquidation of the collateral. The Court's reasoning in *Rash* does not support Green Tree's argument.

In *Rash*, 520 U.S. at 955, the Court was adjudicating a valuation question under 11 U.S.C. §§ 506(a) and 1325(a)(5) (commonly referred to as the cram down provision), which concerns the value that a court is to ascribe to collateral that a debtor proposes to retain over the life of the Chapter 13 plan. The Court reasoned that the creditor subject to a cram down is entitled to the present value of its allowed secured claim because the debtor's proposed disposition and use of the collateral was to retain and use it. *Id.* at 957. The Court held that the proper valuation of the collateral under § 506(a) was "the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller." *Id.* at 960. The Court further stated:

3

> Tying valuation to the actual "disposition or use" of the property points away from a foreclosure-value standard when a Chapter 13 debtor, invoking the cram down power, retains and uses the property. Under that option, foreclosure is averted by the debtor's choice and over the creditor's objection. From the creditor's perspective as well as the debtor's, surrender and retention are not equivalent acts.

*Id.* at 962.

In contrast to the cram down provision of 11 U.S.C. § 1325(a)(5), the best interests of the creditors test of § 1325(a)(4) is focused on what value a creditor would receive if the collateral were to be liquidated as of the effective date of the plan. Thus, the proposed "disposition or use" is a hypothetical liquidation. Accordingly, a liquidation / foreclosure standard is the proper method for valuing the collateral. *See, e.g.*, *In re Jasmin*, No. 05-1734, 1993 Bankr. LEXIS 2090 at *3-5 (Bankr. M.D. Pa. Nov. 29, 1993) (holding that a liquidation value best reflects the proposed disposition and use of collateral pursuant to § 1325(a)(4)). In short, *Rash* is not applicable to the best interest of the creditors test of § 1325(a)(4), and deducting the costs of sale in making a § 1325(a)(4) calculation is consistent with the purposes of that subsection.

Notwithstanding that *Rash* does not support Green Tree's objection, Green Tree argues that, based on the particular facts of this case, the hypothetical costs of sale ought not be deducted. In support, Green Tree states that only one other unsecured claim was filed (for $101) and that the sole purpose of the case was to avoid its deed of trust on the property. Rather than construing Green Tree's argument to advocate a bad faith exception to the formulaic calculation of the best interest of the creditors test, the court construes Green Tree's argument to call into question whether or not the Debtors have proposed their plan in good faith pursuant to § 1325(a)(3).

A debtor's good faith under § 1325(a)(3) is determined by viewing the totality of the circumstances. As detailed by the Fourth Circuit in *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986), the court should consider a number of factors, including: "the percentage of proposed repayment, the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor." The

4

Fourth Circuit further instructs that "[t]he object of the inquiry is to determine whether or not, considering 'all militating factors,' there has been 'an abuse of the provisions, purpose, or spirit' of Chapter 13 in the proposal or plan." (Citation omitted). For example, courts have found a lack of good faith when a debtor files bankruptcy – not out of necessity – but for the purpose of thwarting a single creditor. *E.g.*, *In re Haque*, 334 B.R. 486, 490 (Bankr. D. Mass. 2005) (denying confirmation after the court determined, inter alia, that the debtors' sole motivation in filing the Chapter 13 case was to defeat state court litigation and avoid repayment of a single debt); *In re Moroney*, 330 B.R. 527, 532 (Bankr. E.D. Va. 2005) (denying confirmation when the Debtor only had one real creditor, had no financial emergency prompting bankruptcy, and when the debtor only proposed to pay the creditor 5.9% of its claim). The Debtor bears the burden of proving that a plan is proposed in good faith under 11 U.S.C. § 1325(a)(3). *E.g.*, *In re Smith*, 328 B.R. 797, 802 (Bankr. W.D. Mo. 2005) ("[T]he Court believes the better rule is that the debtor has the ultimate burden of proof on a § 1325(a)(3) confirmation issue, with the initial burden of producing a question regarding compliance with confirmation requirements with the creditor . . . ."); *In re Virden*, 279 B.R. 401, 407 (Bankr. D. Mass. 2002) (holding that it is the debtor that must prove good faith as a condition to confirmation).

Green Tree, however, specifically objected to the Debtors' proposed plan on the grounds of 11 U.S.C. § 1325(a)(4) and it did not specifically reference the good faith requirement of § 1325(a)(3). The issue that the parties agreed to submit to the court for decision was only whether or not the costs of sale should be allowed in performing the best interest of the creditors test based on the particular facts of this case. Consequently, the Debtors have not had an adequate opportunity to present and/or defend any good faith arguments and the court finds it inappropriate at this time to address issues under § 1325(a)(3). The court will, however, allow Green Tree the opportunity to make an objection to the Debtors proposed plan based on § 1325(a)(3) at the continued confirmation hearing in this case that the court will scheduled for August 15, 2006.

### III. CONCLUSION

The court will overrule Green Tree's § 1325(a)(4) objection to confirmation of the Debtors' proposed Chapter 13 plan, but will reset the Debtors' Chapter 13 confirmation hearing for August 15, 2006, at which time Green Tree may make a good faith objection to the Debtors' proposed plan pursuant

5

to § 1325(a)(3).